You may call the next case when you're ready. 1542.13. Jane Sorrell v. Comm of Social Security Oral argument not to exceed 15 minutes per side. Mr. Rake for the Plaintiff Appellant. Good morning. My name is Michael Rake. I represent the Appellant Jane Sorrell and I'd like to reserve 2 minutes please for rebuttal. May it please the Court, this is a Social Security case where the Appellant argues that the non-disability finding is not supported and that the ALJ did not apply the appropriate legal criteria in denying her claim for Social Security benefits. Both parties agree that Jane Sorrell is drastically limited by her medical problems but as is often the case, one specific limitation is at issue here. Mrs. Sorrell suffers from a mass located on her kidney which causes her atrophy, ischemia and very severe swelling of the feet, ankles and legs up to the knee. This is noted at multiple points throughout this record. Her doctors have advised her to elevate her feet above her heart level in order to reduce that swelling in addition to prescribing her Lasix as a medication and compression stockings. Let me make sure because I may have this wrong but is it the case that the only person who told her to elevate her feet above her heart was a nurse and that's not in a physician's advice or diagnosis? Your Honor, there are 3 points at which we would respectfully request you consider the elevation of her leg. The first is at 580 and 582. This is after an ER visit where as you say, Nurse Lawson indicated that she needs to elevate her legs. What is important about that is that Dr. Wise who treated her that day indicated in a statement that he agreed with all pertinent clinical information including history, physical exam and plan. With the advent of managed care, although it is a nurse who actually delivers those instructions, the claimant argues that Dr. Wise gives that opinion and signs off on that opinion. Secondly, Dr. David Allen is a doctor who saw her in the emergency room and this is transcript 698. While that doctor doesn't have a treatment note saying that she should elevate her legs, she was handed instructions that told her to elevate her legs when she left the ER that day. Finally, the claimant testified under oath that her doctors have all advised her to elevate her legs including her treating doctors. Your Honor, respectfully we would argue that this is not just a nurse saying so, this is actually medical doctors and this is also as we argue in our brief elevation being recognized by the federal government as a specific treatment for edema. Your Honor, we would argue that in rejecting this specific limitation is the judge commits error because the vocational expert testified that elevating one's legs... I was going to ask you what limitation you were talking about. I'm sorry, Your Honor. Elevating one's legs would rule out her past work and all 233 of the transcript. So it is an important limitation and one that the judge conspicuously leaves out of his residual functional capacity. The problem is, you do have, she goes to the doctor and if I'm understanding this right, there's some feeling that it may have been the way she slept and the recommendation is that she should elevate her legs. I mean, that might avoid it. But it's in a specific situation, in a specific context. And it's never incorporated into the evaluations that deal with what she can do. And it's not, and none of those people who are expressing her limitations say that she has to keep her legs elevated two hours a day or something or 20 minutes out of every hour. It's not there. I mean, she presented with that symptom once, but it's not in the record as a continuing condition that has to be accommodated during the work day, as opposed to go home and put your feet up. Right. Your Honor, I recognize the concern. What I would argue, though, is first that it does occur throughout the medical record, transcript 451, 578, 589, 682, 689, 780, 789, multiple times throughout the record, swelling and edema is noted. Significantly, the ALJ finds as a severe impairment, swelling of the legs secondary to mass on a kidney. He finds that as a severe impairment that would theoretically result in a limitation. And then finally, I know that the government argues in their brief that swelling of the legs was a result of her postural situation because of her sleeping, but that doesn't address that the ALJ found that as a severe impairment and also it's much more likely that sleep positioning is an aggravating factor of an underlying condition. She says in transcript 85, in the part that Your Honor mentions, that her feet were on the ground and that's how she slept. I'm sorry, that's 578 of the transcript, that her feet were on the ground when she was sleeping and that's why they were swollen. That's the same position her feet would be in a sedentary job, on the ground, and that's something that would medically make sense to cause edema of her legs. The final point you mentioned that I very much wanted to address is that the government says that this statement by Dr. Wise and Nurse Lawson is not actually an opinion, which I think you're alluding to, presumably because it was not completed on one of Social Security's forms or in response to a questionnaire. But we would argue that that is exactly what makes it the most credible opinion in the record. This is not generated for adjudication. That was not generated for the government for their decision. It was not generated for the plaintiff, for interrogatories. This opinion came in the form of a specific instruction from a doctor to his patient and that makes it extremely credible and worthwhile to consider. The judge didn't even mention it. The judge didn't even mention the name Dr. Wise, Nurse Lawson, or that opinion whatsoever. It's too obvious that the ALJ was interfering with the doctor-patient relationship. I don't want to argue that because it's too strong of an allegation. But what I do want to argue is that the ALJ appears to be saying that your doctor's advice to you and his treatment plan for you is not relevant to my determination. Not only am I not going to consider that in my decision, but I'm not going to explain why I'm not going to consider it. I think that might be the biggest problem is that he doesn't explain why it's not included or why it shouldn't be, to some degree, considered. It's only after that becomes the limitation that would result in a favorable outcome that the judge doesn't mention it. That belies another failure of the ALJ and that pertains to the opinion of Dr. Malloy, which we would argue is the most complete actual RFC opinion in the record. When you say that there's an opinion that needs to actually address her limitations, Dr. Malloy's opinion does. In fact, the ALJ says that it is consistent with objective imaging and clinical exam. But he rejects the one part of that opinion that would result in a favorable outcome. He rejects the sitting limitation. Dr. Malloy says the claimant cannot sit very long and the ALJ rejects that. He leaves it off because, from a video teleconference, he saw the claimant sit through a 40-minute hearing and apparently believes that seeing somebody sit through a 40-minute hearing means that they can sit six to eight hours a day. Therefore, he rejects only that portion of Dr. Malloy's opinion. Your Honor, we would argue that that falls below the minimal standard of review for an examining source and it is disturbing because of how they leave one section of the opinion out, whereas they give weight to everything that allows the judge to deny the case. The reason why it's so important for the ALJs in these situations to describe what weight is given to the evidence is because the Social Security Administration doesn't want a claimant to be baffled or confused at why their treating doctor tells them that they're disabled or gives them some advice and then the government says they're not and that they don't have the limitations that their doctor says. I believe that we can understand within public policy that at least an explanation of why a treating source opinion is rejected is necessary here and that absolutely doesn't exist in this case. There's no mention of those doctors at all. The government also appears to argue in the brief that even if Dr. Wise's statement is an opinion, it is a patently deficient opinion and we would argue that that's not correct. The opinion is, as I said, a statement from a doctor to his patient and SSR 96-5P requires that all medical statements need to be evaluated and that's not the case here. I'd also like to briefly mention credibility issues. In terms of credibility, the ALJ discredits the claimant's testimony saying that her statements are not credible to the extent that they are inconsistent with my residual functional capacity assessment. We would argue that that is an improper analysis under 20 CFR 404-1529. The statements of the claimant at the hearing need to be reviewed against the actual evidence, not against his residual functional capacity assessment. There's some back and forth on this between our briefs, but I think what I want to make clear is that we believe that it's not appropriate for an ALJ. It is appropriate for the ALJ to say, I discount their standing or walking limitations because the evidence shows they ran a marathon. But it's not appropriate for the ALJ to say, I discount their alleged standing and walking limitations because they're inconsistent with my functional abilities. That compares it to a decision that has already been made rather than comparing it to evidence that is paramount to the case. Counsel, just to be clear on one thing, who are the physicians whose opinions or records you rely upon for your client's argument? I know you said Dr. Malloy, and there are some record reviews that were done by people who didn't examine your client, but as to physicians who actually examined or treated her, which are those whom you would rely upon? Yes, Your Honor. Dr. Wise and Nurse Lawson. Dr. Malloy. Dr. Gardner and McLeod are the two state agency reviewing sources, and there is another treating physician, her longtime family physician, Dr. Toole, and that opinion is to some degree problematic because Dr. Toole says that she has given her opinion based upon the claimant's subjective complaints. We recognize that that's not as strong of an opinion as Dr. Malloy because it's not based upon clinical and objective evidence, but I would argue that it's not worthless because the claimant's statements and complaints do matter otherwise why even have a hearing? I see I'm out of time. Thank you. Good morning. Good morning, Your Honor. May it please the Court. My name is Keewana Callip, and I represent the Commissioner of Social Security. So I think the main issue in this case, as counsel noted, is the limitation for her to elevate her legs. And I think there's no question that she has edema of the lower extremities, but the only question is whether or not the ALJ accounted for that limitation and whether because you have edema of the lower extremities that you must have a restriction included for you to elevate your legs. And our position, which was noted in the District Court's decision, is that is not the case. There were four physicians, five medical opinions, and none of those medical opinions indicated that the claimant needed to elevate her legs. In fact, none of the doctors attributed any of the limitations in their opinions to that specific condition. Some of those doctors were just reviewers of records, were they not? Yes. They are our state agency reviewing physicians, but they are still experts in Social Security disability evaluation, so their findings are opinion evidence. And they did look at the evidence and neither one of them, there were two physicians at two different stages of the proceeding, and neither one of the doctors indicated that she needed to elevate her legs. And although plaintiff relies on the treatment record from Dr. Wise and Nurse Lawson, I think it's important that in the District Court, in the objections to the Magistrate Judge's report and recommendation, the plaintiff's statement was while there may be no opinion evidence, there is other medical  evidence. So in the District Court, the claimant conceded that there was no opinion evidence. So the characterization of it as opinion evidence in this court is misplaced. And that distinction is important because there is a different standard of evaluation for medical opinions and other evidence. And in this particular case, there just wasn't any evidence, medical opinion evidence that she needed to elevate her legs. And even with respect to Dr. Wise's opinion, Dr. Wise's treatment record that the plaintiff is calling an opinion, if the court were to conclude that that was an opinion, as the court noted, there was no discussion of whether or not that recommendation to elevate her legs would occur during the work day. And as we noted in our brief... I understand that it's not entirely clear, but in making this type of determination, I mean, shouldn't the ALJ sort of try to flesh that out a bit? Like, you know, find out what the story was with the edema and how often she had to put her legs up? And was it okay just to do it at the end of the day? Well, I think because the ALJ had five medical opinions and none of the medical opinions mentioned elevating her legs, then it was okay. It was proper for the ALJ to look at a thorough review of the record and discuss the relevant evidence. In this particular case, there were over 800 pages, almost 400 pages of which were medical evidence. And the ALJ had to condense his discussion into what was most relevant. And the ALJ spent a fair amount of time discussing the opinion evidence and as I've noted, none of it mentioned elevating her legs. And with respect to this treatment record and I would like to address counsel's argument that we are saying that it's not an opinion because it was not on an SSA form. That is not the government's position. The government's position is that counsel and the district court admitted that it was not an opinion. And also, even if it was an opinion, a medical opinion is the most you can do despite your complaint, despite your impairments. So a limitation to elevate legs does not tell you anything alone. And this was not a case where the plaintiff said my feet were just over the ground. She said she slept in an upright position with her feet hanging over the bed. So a more reasonable reading of that is actually elevate your legs while you're sleeping, in my opinion. Not for you to elevate your legs during the work day when, as the court noted, there was no discussion of what she could do during her work day. And because there was no discussion of whether this needed to occur during the work day, how often or how high she needed to elevate her legs, there was just nothing that the ALJ or any reasonable ALJ could have gleaned from that one recommendation to elevate legs that would have in any way provided insight to his RFC finding. With respect to Dr. Malloy's opinion, while the ALJ did give the opinion partial weight and explained that some portions of the hearing were inconsistent with the record, the ALJ noted Dr. Malloy's sitting limitation with the ability to sit only 20 minutes at a time is not supported by the longitude and the record, in addition to her sitting at a hearing for 40 minutes. And so while counsel did mention that it would be okay for the ALJ that the ALJ somehow could not have properly witnessed it because it was a video hearing or the ALJ took her ability to sit at a video hearing as a reason for rejecting his limitation, that is not the only thing that the ALJ mentioned. The ALJ also cited to a portion of his decision where he discussed MRIs, x-rays, examinations, her treatment history, her Doppler findings, and as the district court noted, this was all a thorough review of the record in explaining why this portion of the doctor's opinion was not entitled to weight. And we would also like to point out that that limitation by Dr. Wise was not supported by his own record. He explained when asked what led to his findings, he said back and knee pain limit push, pull, bend, reaching, and repetitive foot movements. So while counsel would like to point to a treatment record that was provided on the same day that he provided this opinion, that is not what the doctor himself was relying on when he assessed a specific limitation. And we have to take Dr. Wise at his word. And because he explained that it only limited the pushing, the pulling, the reaching, and the repetitive foot movements, I think that makes it clear that a sitting limitation is just not supported. And also, Plaintiff was at the hearing, Plaintiff was at an administrative hearing. She was given the opportunity to explain why she could not work. She was asked three different occasions. She never once mentioned her inability to sit was something that limited her. And the hearing was her one time to tell the judge exactly what was wrong with her and why she could not. Can you talk about her lower back compression and her difficulties with her back? Yes. And she mentioned in the discussion of her back, she mentioned limitations lifting, standing, walking, carrying things. And the ALJ accommodated that by limiting her to the least demanding category of work that an individual can perform. And then added additional restrictions on her ability to walk and her ability to stand. And so I do think it's important that we also have to listen to the claimant in this case. And because she didn't mention any limitations sitting at the hearing, it does call into question whether or not her allegations of sitting limitations is as severe as she now complains in this proceeding. And also moving forward to the, I would like to back up actually. In respect to Dr. Toole's opinion, as counsel noted, there were significant problems with Dr. Toole's opinion. And in plaintiff's initial brief to this court, she did not argue that the ALJ improperly evaluated Dr. Toole's opinion. However, in her reply, she did make that argument. And because she has pointed out there are significant problems, which the district court noted, that not only, the opinion wasn't just based on the claimant's subjective complaints. It was also internally inconsistent, at least the 2012 opinion regarding the claimant's ability to work, which was completed via interrogatories. It was internally inconsistent. It was inconsistent with plaintiff's treatment history, her daily activities. And it was also not supported by specific findings. So this wasn't just an opinion that was not given weight for one reason. There were several reasons why the ALJ did not give this opinion weight. And with respect to the credibility argument, plaintiff has characterized it as the ALJ doing it backwards and the ALJ comparing her statements against the RFC. What counsel is really talking about is the agency's boilerplate. And we will admit, courts in particular, the Seventh Circuit has been very critical of the agency's boilerplate. However, even the Seventh Circuit has softened its stance and has held that the use of the boilerplate can be harmless when the ALJ does as it did here and provides specific reasons. And if plaintiff's argument was correct and whenever you saw that sentence, you had to reverse a decision, the district court's ability to review ALJ's decisions in general would be rendered meaningless. Because whenever a court saw that ALJ did not support it, or how many reasons, the courts would have to reverse it because of that sentence. And it's very clear that that was not any court's or the Seventh Circuit's intention. So the fact that that one sentence is in there, that alone is not sufficient reason to reverse the ALJ's credibility determination, which was supported with very specific findings. And to say that it would be okay if the ALJ said you can, your standing and walking is not supported because you can run a marathon. I think we can all agree that a person doesn't have to be able to run a marathon in order to not be found disabled. In this particular case, the claimant was performing activities and had a volunteer work activity at least three days a week. And while the ALJ did note her activities and her volunteer work activity, it was not to show what she could do on a sustained basis, but to show during a time where she was alleging that her impairments were so severe that she could not engage in any work activity, she was still able to do this. And so  I would ask that the court affirm the District Court's decision. Thank you. Mr. Rake, did you reserve some time for rebuttal? Yes, thank you, Your Honor. Two minutes, please. Your Honor, there are just three very  did not make a decision on the I would like to please correct, respectfully, an inaccuracy. It was stated that the claimant's one opportunity to discuss her problems sitting was at the hearing, and she didn't do so. And I would respectfully point out that that's inaccurate. I was at that hearing, and page 111 of the transcript indicates that the claimant testified that her legs were on fire, and she not only needed to sit down but also to remove her pain. So it's incorrect and inaccurate to somehow allege that she didn't mention these as being severe problems at her hearing, in addition to the fact that she said she had to elevate her legs. Secondly, it was stated that Dr. Molloy's opinion were based on, or the judge's rejection of Dr. Molloy's opinion was based on objective things. That's also inaccurate. He says that Dr. Molloy's opinion is based on discontent for two reasons. One, it's inconsistent with the longitudinal record, which is not specific. He doesn't say what in that record is inconsistent, and I saw her on a video hearing. Those are his two reasons for rejecting Molloy's opinion, not all these other things, Doppler studies and that. He mentions that in a separate part of his decision not tied to this. The final argument, and perhaps the most significant argument I'd like to make today, is that the ALJ himself, on page 8 of his decision, is in a portion of the decision where he's talking about her impairments and doing a recitation of the evidence, but also discounting her symptoms. He says, quote, "...she reported swelling in her feet after standing an hour. However, the swelling decreased when she elevates her feet." To paraphrase, he's saying, I recognize she has severe swelling of the feet, but it's not that severe because she can put her feet up. Well, it's disingenuous, we argue, for the ALJ on one portion of the decision to seemingly recognize that, but when the time comes that that's the limitation that results in a favorable outcome for him to inexplicably leave that out. Thank you. Thank you very much. The case is submitted.